**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| MARCHESE STYLE LLC, a California limited liability company, doing business as "RESA", <br><br> Plaintiff, <br><br> v. <br><br> THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE A, <br><br> Defendants. | Case No.  2:26-cv-2113-RMG <br> **COMPLAINT FOR COPYRIGHT INFRINGEMENT; DEMAND FOR JURY TRIAL** |

Plaintiff, Marchese Style LLC d/b/a "Resa" ("Resa" or "Plaintiff"), by and through its undersigned counsel, alleges as follows:

**NATURE OF ACTION**

1.     This action has been filed by Plaintiff in attempt to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use that same unauthorized and unlicensed reproductions that infringe Plaintiff's copyright (collectively, the "Infringing Products").

2.     Resa owns the fun and unique design (the "Subject Design") depicted in **Exhibit A** and incorporates the Subject Design on products offered for sale, such as apparel.

3.     The Defendants create numerous Internet stores and design them to appear to be selling genuine products copyrighted by Plaintiff, while selling inferior imitations of Plaintiff's Design. The Defendant Stores share unique identifiers, such as design elements and similarities of the infringing products offered for sale, establishing a logistical relationship between them, and suggesting that Defendants' illegal operations arise from the same transaction, occurrence, or series

1
COMPLAINT

of transactions and occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal infringing operation. Plaintiff is therefore forced to file this action to combat Defendants' infringement of Plaintiff's Copyrighted Subject Design, and to protect unknowing customers from purchasing unauthorized products over the Internet.

4.     Resa brings this action for willful copyright infringement and piracy committed for purposes of commercial advantage or private financial gain by the reproduction or distribution, including by electronic means, of one or more copies of copyrighted works in violation of 17 U.S.C. §501, and for all the remedies available under the Copyright Act 17 U.S.C. § 101, *et seq*.

5.     This unauthorized usage constituted copyright infringement, amongst other things, as set forth below.

### PARTIES

6.     Resa is a California limited liability company doing business throughout the United States and within this District.

7.     Resa owns all rights, title, and interest in the Subject Design and copyright described herein that is the subject of this action as shown in **Exhibit A** attached hereto.

8.     Resa sells thousands of products featuring its original designs every year.

9.     Defendants have the capacity to be sued under Federal Rule of Civil Procedure 17(b).

10.     The Defendants in **Schedule A** (collectively, "Defendants") are individuals and business entities who, upon information and belief, reside primarily in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within South Carolina and in this District, through the operation of fully interactive

commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including South Carolina, and has, upon information and belief, sold, offered for sale, and continues to sell, products containing the Subject Design to consumers within the United States and this District.

11. Defendants have purposefully directed some portion of their illegal activities towards consumers in the state of South Carolina through the advertisement, offer to sell, sale, and/or shipment of infringing goods to the State.

12. Upon information and belief, Defendants may have engaged in fraudulent conduct providing false and/or misleading information to the Internet based e-commerce platforms or domain registrar where they offer to sell and/or sell infringing products.

13. Upon information and belief, Defendants will likely continue sell and offer for sale products containing Resa's Subject Design, namely products featuring in whole, or in part, the Subject Design, or unauthorized derivatives thereof (collectively, the "Infringing Products") unless preliminarily and permanently enjoined.

14. Defendants use their Internet-based businesses to infringe the intellectual property rights of Resa and others.

15. Defendants, through the sale and offer to sell infringing products, are directly, and unfairly, competing with Resa economic interests in the state of South Carolina and causing Resa harm and damage within this jurisdiction. The Infringing Products are shown in **Exhibit B** attached hereto.

16. The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Resa's Subject Design and the destruction of the legitimate market sector in which it operates.

17.     Upon information and belief, at all times relevant hereto, Defendants had actual or constructive knowledge of Resa's intellectual property rights, including Resa's exclusive right to use and license such intellectual property rights.

18.     Resa is informed and believes and thereon alleges that at all times relevant hereto each of the Defendants were the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants and was at all times acting within the scope of such agency, affiliation, alter-ego relationship and/or employment; and actively participated in or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged, with full knowledge of all the facts and circumstances, including, but not limited to, full knowledge of each and every violation of Resa's rights and the damages to Resa proximately caused thereby.

## JURISDICTION AND VENUE

19.     This Court has original subject matter jurisdiction over the claims in this action arising under the Copyright Act of 1976, Title 17 U.S.C., §§ 101, *et seq*., under 28 U.S.C. §§ 1331 and 1338(a), (b).

20.     Defendants are subject to personal jurisdiction in this District because they purposefully direct their activities toward and conduct business with consumers throughout the United States, including within the state of South Carolina and this district, through at least the internet-based e-commerce stores accessible in South Carolina.

21.     Defendants are further subject to personal jurisdiction in this district because each Defendant directly targets consumers in the United States, including in South Carolina, through at least the fully interactive commercial Internet stores operating under the Defendant domain names and/or the Online Marketplace Accounts identified in **Schedule A** attached hereto (collectively, "Defendants" or "Defendant Internet Stores"). Specifically, the Defendants are reaching out to do

business with South Carolina residents by operating one or more commercial, interactive Internet Stores through which South Carolina residents can purchase products infringing Plaintiffs copyrighted design and work. Each of the Defendants has targeted sales from South Carolina residents by operating online stores that offer shipping to the United States, including South Carolina, accepts payment in United States Dollars, and on information and belief, has sold infringing products to South Carolina residents. Each of the Defendants are committing tortious and illegal activities directed towards the state of South Carolina and causing substantial injury in South Carolina, and Plaintiff's claims arise out of those activities.

22.    Alternatively, Defendants are subject to personal jurisdiction in this district under Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

23.    Venue is proper in this district under 28 U.S.C. § 1400(a) because Defendants and their agents are subject to the court's personal jurisdiction and therefore reside in this judicial district or may be found here.

24.    Venue in this judicial district is otherwise proper under 28 U.S.C. § 1391(b)(3) because Defendants are subject to the court's personal jurisdiction and not a resident in the United States and therefore there is no district in which any action may otherwise be brought.

## **JOINDER OF DEFENDANTS IN THIS ACTION IS PROPER**

25.    In the past, Plaintiff was able to police infringements of its Subject Design against identifiable infringers. The rise of online retailing, coupled with the ability of e-commerce sites to hide their identities, has made it nearly impossible for policing actions to be undertaken. Plaintiff has attempted takedown procedures to remove the infringing products, but these efforts have proved

to be unavailing as numerous additional seller profiles under new seller aliases continue to appear selling the same infringing products. The aggregated effect of the mass counterfeiting that is taking place has overwhelmed plaintiffs and its ability to police its copyrights against the numerous anonymous defendants which are selling illegal counterfeits at prices substantially below the cost of licensing the original and earning revenues that rightfully belong to Plaintiff.

26.     The evidence supporting Plaintiff's claims proves a cooperative counterfeiting network using fake eCommerce store fronts designed to appear to be selling authorized products. To be able to offer the counterfeit products for sale substantially below the cost of a license to use the Subject Design, while still being able to turn a profit after absorbing the cost of manufacturing, printing, advertising, and shipping requires an economy of scale only achievable through a cooperative effort throughout the supply chain. As Homeland Security's recent report confirms, counterfeiters act in concert through coordinated supply chains and distribution networks to unfairly compete with legitimate artists while generating huge profits for the illegal counterfeiting network:

> Historically, many counterfeits were distributed through swap meets and individual sellers located on street corners. **Today, counterfeits are being trafficked through vast e-commerce supply chains in concert with marketing, sales, and distribution networks**. The ability of e-commerce platforms to aggregate information and reduce transportation and search costs for consumers provides a big advantage over brick-and-mortar retailers. Because of this, sellers on digital platforms have consumer visibility well beyond the seller's natural geographical sales area.
>
> The impact of counterfeit and pirated goods is broader than just unfair competition. Law enforcement officials have uncovered intricate links between the sale of counterfeit goods and transnational organized crime. **A study by the Better Business Bureau notes that the financial operations supporting counterfeit goods typically require central coordination**, making these activities attractive for organized crime, with groups such as the Mafia and the Japanese Yakuza heavily involved. Criminal organizations use coerced and child labor to manufacture and sell counterfeit goods. In some cases, the proceeds from counterfeit sales may be supporting terrorism and dictatorships throughout the world.
> . . .

> Selling counterfeit and pirated goods through e-commerce is a highly profitable activity: production costs are low, millions of potential customers are available online, transactions are convenient, and listing on well-branded e-commerce platforms provides an air of legitimacy.

*See* Department of Homeland Security, Combating Trafficking in Counterfeit and Pirated Goods, Jan. 24, 2020, (*https://www.dhs.gov/publication/combating-trafficking-counterfeit-and-pirated-goods*), at 10, 19 (emphasis added) attached hereto as **Exhibit C**.

27.     The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the unauthorized products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants use aliases to avoid liability by going to great lengths to conceal both their identities as well as the full scope and interworking of their illegal network. Despite deterrents such as takedowns and other measures, the use of aliases enables counterfeiters to stymie authorities:

> A counterfeiter seeking to distribute fake products will typically set up one or more accounts on online third-party marketplaces. The ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders. Rapid proliferation also allows counterfeiters to hop from one profile to the next even if the original site is taken down or blocked. On these sites, online counterfeiters can misrepresent products by posting pictures of authentic goods while simultaneously selling and shipping counterfeit versions.
> . . .
> Not only can counterfeiters set up their virtual storefronts quickly and easily, but they can also set up new virtual storefronts when their existing storefronts are shut down by either law enforcement or through voluntary initiatives set up by other stakeholders such as market platforms, advertisers, or payment processors.

*Id*. at 5, 11, 12.

28.     Defendants also engaged in communications with each other to carry out infringing activities and evade liability. Specifically, Plaintiff is aware of websites such as *QQ.com*, *Sellerdefense.cn*, and others which sellers like the ones named here advise each other of newly filed copyright infringement cases involving the Infringing Products and collectively carry out tactics to evade liability for its wrongs.

29.    eCommerce giant Alibaba has also made public its efforts to control counterfeiting on its platform. It formed a special task force that worked in conjunction with Chinese authorities for boots-on the ground effort in China to stamp out counterfeiters. In describing the counterfeiting networks it uncovered, Alibaba expressed its frustration in dealing with "vendors, affiliated dealers and factories" that rely upon fictitious identities that enable counterfeiting rings to play whack-a-mole with authorities. *See* Xinhua, *Fighting China's Counterfeits in the Online Era*, China Daily (Sept. 19, 2017), available at *www.chinadaily.com.cn/business/2017-09/19/content_32200290.htm* (**Exhibit D**).

30.    Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, loss of control over its reputation and goodwill as well as the quality of goods bearing the Subject Design. The rise of eCommerce as a method of supplying goods to the public exposes brand holders and creators that make significant investments in their products to significant harm from counterfeiters. *See Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020, (**Exhibit C**) at 4, 8, 11.

31.    Not only are the creators and copyright holders harmed, but the public is also harmed as well. *See e.g., id*. at 3, 4.

32.     Plaintiff's investigation shows that the telltale signs of an illegal counterfeiting ring are present in the instant action. For example, **Schedule A** shows the use of store names by the Defendant Internet Stores that employ no normal business nomenclature and, instead, have the appearance of being made up, or if a company that appears to be legitimate is used, online research shows that there is no known address for the company. Thus, the Defendant Internet Stores are using fake online storefronts designed to appear to be selling genuine copies of Plaintiff's Subject Design, while selling inferior imitations of Plaintiffs' Subject Design. The Defendant Internet

Stores also share unique identifiers, such as design elements, SEO tactics like keyword stuffing, and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of Plaintiff's registered Subject Design, as well as to protect unknowing consumers from purchasing unauthorized copies and derivatives of the Subject Design over the internet.

33.     The attached screenshots of the Infringing Products shown in **Exhibit B** also indicate that Defendants are collectively involved in the same counterfeiting ring or otherwise associated with each other. Specifically, nearly all of the Infringing Product listings use the same photographs to advertise or the same model wearing the clothing.

34.     Thus, Resa brings this action for willful copyright infringement and piracy committed for purposes of commercial advantage or private financial gain by the reproduction or distribution, including by electronic means, of one or more copies of copyrighted works in violation of 17 U.S.C. §501, and for all the remedies available under the Copyright Act 17 U.S.C. § 101, *et seq*.

35.     Joinder of all Defendants is permissible under Fed. R. Civ. P. 20(a)(2), which permits joinder of persons in an action where any right to relief is asserted against defendants jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in this action. As stated above, joinder is proper here based on the logical relationship between the Defendants, the seller profiles, and the evidence of coordination amongst the sellers identified.

36.     Each Defendant uses non-descriptive seller aliases making it difficult or impossible to identify their true identity, but upon information and belief, the sellers are acting simultaneously as part of a network of infringement to violate Plaintiff's rights.

37.     Joinder of the multiple Defendants is permitted because Resa asserts rights to relief against these Defendants jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and common questions of law or fact will arise in the action.

38.     Joinder of the multiple Defendants serves the interests of convenience and judicial economy, which will lead to a just, speedy, and cost-efficient resolution for Resa, Defendants, and this Court.

39.     This court has jurisdiction over the multiple Defendants. Venue is proper in this court for this dispute involving the multiple Defendants.

40.     Resa's claims against the multiple Defendants are all transactionally and logically related. All Defendants are engaging in the same systematic approach of establishing online storefronts to redistribute illegal products from the same or similar sources while maintaining financial accounts that the Defendants can easily conceal to avoid any real liability for their actions. All Defendants undertake efforts to conceal their true identities from Resa to avoid accountability.

41.     All Defendants are engaging in the same infringing activities, at the same time and therefore are undeniably involved in the same series of transactions or occurrences giving rise to this claim at the same time.

42.     Based on the Infringing Products quality and similarities in printing, Plaintiff has reason to believe that the products are sourced from the same vendor, manufacturer, or printing facility. Additionally, the sellers identified in Schedule A self-identify its location either in the same

city in China or cities within close proximity to each other. Further, the product listings feature the same photographs and advertisements, further supporting that all Defendants named in Schedule A obtain the Infringing Products from a common source.

43.     Defendants are using infringements of Resa's intellectual property rights to drive Internet consumer traffic to their e-commerce stores and decreasing the size and value of Resa's legitimate marketplace and intellectual property rights at Resa's expense.

44.     Defendants, through the sale and offer to sell infringing products, are directly and unfairly competing with Resa's economic interests in the state of Illinois and causing Resa harm and damage within this jurisdiction.

45.     Upon information and belief, at all times relevant hereto, Defendants had actual or constructive knowledge of Resa's intellectual property rights, including Resa's exclusive right to use and license such intellectual property rights.

## CLAIMS RELATED TO PLAINTIFF'S SUBJECT DESIGN

46.     Resa owns all rights in the Subject Design shown in **Exhibit A**.

47.     Resa complied in all respects with the Copyright Act, 17 U.S.C. § 101, *et. seq.*, and is the sole owner of the exclusive rights, title, interests, and privileges in and to the Subject Design.

48.     Prior to the acts complained of herein, Resa widely publicly displayed and disseminated the Subject Design including without limitation on Resa's website *www.shop-resa.com* and its various social media platforms under the name "Resa".

49.     Genuine products bearing the Subject Design are sold by Resa and its authorized distributors.

50.     Defendants, and each of them, have willfully copied, reproduced, distributed, sold, and/or offered for sale the Subject Design for financial benefit by, without limitation, reproducing

the Subject Design online and/or products bearing copies of the Subject Design for commercial benefit, including without limitation, through Defendant Internet Stores.

51.     Defendants are using identical or substantially similar copies of the Subject Design on fabric and thereafter using it to create, offer for sale, and sell clothing (the "Infringing Use"). True and correct screen captures depicting non-inclusive exemplar(s) of the Defendants' unauthorized use are shown in **Exhibit B**. These copies and screen captures represent non-inclusive exemplars of the Infringing Use.

52.     Defendants advertise their e-commerce stores to the consuming public via e-commerce stores on Internet marketplace websites.

53.     In advertising their stores and products, Defendants improperly and unlawfully use the Subject Design without Resa's consent, authorization, or license.

54.     By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Resa's genuine goods.

55.     Defendants are causing individual, concurrent and indivisible harm to Resa and the consuming public by (i) depriving Resa and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Resa's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value associated with the images, and (iii) increasing Resa's overall cost to market its goods and educate consumers via the Internet.

56.     As a result, Defendants are defrauding Resa and the consuming public for Defendants' own benefit. Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear unknowing to customers to be authorized online retailer, outlet stores, or wholesalers selling the genuine Subject Design. Many of the Defendant Internet Stores look sophisticated and accept payment in US Dollars via credit cards, PayPal, and

other legitimate payment methods. Defendant Internet Stores include design elements that make it very difficult for consumers to distinguish such infringing sites from authorized seller websites.

57.    Upon information and belief, at all times relevant hereto, Defendants had full knowledge of Resa's ownership of the Subject Design, including its exclusive right to use and license such Subject Design, through Resa's numerous online profiles and features, online publications and press featuring Resa's work, Resa's social media accounts, and/or through viewing the Subject Design on third-party websites (e.g., Tumblr, Pinterest, internet search engines, etc.).

58.    Defendants' use of the Design, including the promotion and advertisement, reproduction, distribution, sale and offering for sale their infringing goods, is without Resa's consent or authorization.

59.    Defendants are engaging in the above-described infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Resa's rights for the purpose of trading on Resa's intellectual property and reputation.

60.    Resa has not in any way authorized Defendants, or any of them, to copy, reproduce, duplicate, disseminate, distribute, or create derivative works of the Subject Design.

61.    If Defendants' intentional infringing activities are not preliminarily and permanently enjoined, Resa and the consuming public will continue to be harmed.

62.    Defendants' infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase.

63.    Defendants are likely to transfer or conceal their assets to avoid payment of any monetary judgment awarded to Resa.

64.    Resa is suffering irreparable injury and has suffered substantial damages as a result of Defendants' unauthorized and infringing activities and their wrongful use of Resa's intellectual property rights.

65.    Resa should not have competition from Defendants because Resa never authorized Defendants to use Resa's Subject Design.

66.    Resa has no adequate remedy at law.

## FIRST CLAIM FOR RELIEF

(For Copyright Infringement – Against all Defendants, and Each)

67.    Resa repeats, re-alleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs of this Complaint.

68.    Resa, a California limited liability company, has complied in all respects with the Copyright Act of the United States and other laws governing copyright and secured the exclusive rights and privileges in and to the copyright at issue.

69.    The Subject Design constitutes original work of authorship fixed in a tangible medium of expression and is protected under the Copyright Act, 17 U.S.C. §§ 101 et seq.

70.    Under 17 U.S.C. § 106, Resa has the exclusive rights and privileges to reproduce, prepare derivate works, distribute copies, and import copies into the United States of the copyrighted Subject Design.

71.    Defendants, and each of them, accessed Resa's Subject Design through widespread display, authorized retailers, or through Resa's numerous online profiles and features, online publications and press featuring Resa's work, Resa's social media accounts, and/or through viewing the Subject Design on third-party websites.

72.     Resa alleges that Defendants, and each of them, infringed Resa's exclusive copyright by creating infringing derivative works, copying, displaying, and/or distributing works to the public based upon Resa's copyrighted art in violation of 17 U.S.C. § 106, as seen, without limitation, in the screen captures attached hereto in **Exhibit B**.

73.     Due to Defendants' Infringing Use as alleged herein, Defendants, and each of them, have obtained direct and indirect profits they would not otherwise have realized but for their infringement of Resa's rights in the Subject Design. As such, Resa is entitled to disgorgement of Defendants', and each of their, profits directly and indirectly attributable to Defendants' infringement of its rights in the Subject Design in an amount to be established at trial.

74.     Defendants', and each of their, conduct constitutes willful and direct copyright infringement. The similarities between the Subject Design and Infringing Use further proves the willful and direct infringement by Defendants, and each of them.

75.     On information and belief, Defendants, and each of them, routinely and intentionally infringe the intellectual property rights of others, including but not limited to, acting with willful blindness and/or reckless disregard.

76.     Due to Defendants', and each of their, acts of infringement, Resa has actually and proximately suffered actual, general, and special damages in an amount to be established at trial under 17 U.S.C. § 504(b) and (c).

77.     The harm caused to Resa is irreparable.

78.     Resa is entitled to temporary and permanent injunctive relief from Defendants' willful infringement.

79.     Resa complied with registration requirements for the Subject Design before the commission of the infringement at issue and on that basis seeks statutory damages in an amount up to $150,000.00 per artwork per the Copyright Act.

80.     Resa is informed and believes and thereon alleges that Defendants, and each of their, conduct as alleged herein was willful, reckless, and/or with knowledge, subjecting Defendants, and each of them, to enhanced statutory damages, claims for costs and attorneys' fees, and/or a preclusion from deducting certain costs when calculating disgorgeable profits.

**SECOND CLAIM FOR RELIEF**

(For Vicarious and/or Contributory Copyright Infringement – Against all Defendants, and Each)

81.     Resa repeats, re-alleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs of this Complaint.

82.     On information and belief, Resa alleges that Defendants, and each of them, knowingly induced, participated in, aided and abetted in and profited from the illegal reproduction and distribution of the Subject Design as alleged hereinabove. Such conduct included, without limitation, creating derivative works, creating products which use Resa's design, and/or selling such derivative works and products and that that Defendants knew, or should have known, were not authorized to be published by Defendants.

83.     On information and belief, Resa alleges that Defendants, and each of them, are vicariously liable for the infringement alleged herein because they had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct. Specifically, Defendants, and each of them, profited in connection with the Infringing Use, and were able to supervise the distribution, broadcast, and publication of the Infringing Use.

84. By reason of the Defendants', and each of their, acts of contributory and vicarious infringement as alleged above, Resa has suffered general and special damages in an amount to be established at trial.

85. Due to Defendants', and each of their, acts of copyright infringement as alleged herein, Defendants, and each of them, have obtained direct and indirect profits they would not otherwise have realized but for their infringement of Resa's rights in the Subject Design. As such, Resa is entitled to disgorgement of Defendants', and each of their, profits directly and indirectly attributable to Defendants', and each of their, infringement of Resa rights in the Subject Design, in an amount to be established at trial.

86. On information and belief, Resa alleges that Defendants, and each of them, have committed acts of copyright infringement, as alleged above, which were willful, intentional and malicious, which further subjects Defendants, and each of them, to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to $150,000.00 per infringement and/or a preclusion from asserting certain equitable and other defenses.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment as follows:

## Against All Defendants

Wherefore, Plaintiff prays for judgment as follows against all Defendants and with respect to each claim for relief:

a. Entry of temporary, preliminary, and permanent injunctions pursuant to 17 U.S.C.§ 502(a), and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, affiliates, and/or all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing,

advertising or promoting, distributing, selling or offering to sell infringing goods; from infringing the Subject Design; from using the Subject Design, or any design similar thereto, in connection with the sale of any unauthorized goods; from using any reproduction, infringement, copy, or colorable imitation of the Subject Design in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; and from otherwise unfairly competing with Plaintiff;

b.     Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendants and all third parties with actual notice of the injunction issued by this Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using the Subject Design;

c.     Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiff's request, the applicable governing Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by this Court disable and/or cease facilitating access to the Seller IDs and any other alias seller identification names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling foods bearing infringements of the Subject Design;

d.     Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that, upon Plaintiff's request, any messaging service and Internet marketplace website operators, administrators, registrar and/or top level domain (TLD)

registry for the Seller IDs who are provided with notice of an injunction issued by this Court identify any e-mail address known to be associated with Defendants' respective Seller IDs.

e.    Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by this Court permanently remove from the multiple platforms, which include, *inter alia*, a direct platform, group platform, seller product management platform, vendor product management platform, and brand registry platform, any and all listings and associated images of goods bearing infringements of the Subject Design via the ecommerce stores operating under the Seller IDs, including but not limited to the listings and associated images identified by the "parent" and/or "child" Product Identification Numbers shown in **Exhibit B** and the Seller Aliases on **Schedule A** attached hereto, and upon Plaintiff's request, any other listings and images of goods bearing infringements of the Subject Design associated with any PIN linked to the same sellers or linked to any other alias seller identification names being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing infringements of the Subject Design;

f.    Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and this Court's inherent authority that, upon Plaintiff's request, Defendants and any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by this Court immediately cease fulfillment of and sequester all goods of each Defendant bearing the Subject Design in its inventory, possession, custody, or control, and surrender those goods to Plaintiff;

g.      Entry of an Order requiring Defendants to correct any erroneous impression the consuming public may have derived concerning the nature, characteristics, or qualities of their products, including without limitation, the placement of corrective advertising and providing written notice to the public;

h.      Entry of an Order requiring Defendants to account to and pay Plaintiff his actual damages and Defendants' profits attributable to the infringement, or, at Plaintiff's election, statutory damages, as provided in 17 U.S.C. § 504;

i.      Entry of an award, pursuant to 17 U.S.C. § 505, of Plaintiff's costs, disbursements, and reasonable attorneys' fees, associated with bringing this lawsuit;

j.      That Plaintiff be awarded its costs and attorneys' fees to the extent they are available under the Copyright Act U.S.C. §§ 505, 1203, *et seq.*

k.      Entry of an Order that, upon Plaintiff's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs, or other alias seller identification or ecommerce store names used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s) and remain restrained until such funds are surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein;

l.      That a trust be entered over all Infringing Uses, and all profits realized through the sales and distribution of said uses;

m.      That Plaintiff be awarded pre-judgment interest as allowed by law;

n.    That Plaintiff be awarded the costs of this action; and

o.    That Plaintiff be awarded such further legal and equitable relief as the Court deems proper.

Plaintiff demands a jury trial on all issues so triable pursuant to Fed. R. Civ. P. 38 and the 7th Amendment to the United States Constitution.

                                        Respectfully submitted,

Dated: May 28, 2026            By:    */s/ Jeffrey T. Stover*
                                        Jeffrey T. Stover, Esq.
                                        HAYNSWORTH SINKLER BOYD
                                        134 Meeting Street, 3rd Floor
                                        Charleston, SC 29401
                                        jstover@hsblawfirm.com


                                        Trevor W. Barrett, Esq.
                                        *Pro hac vice application forthcoming*
                                        DONIGER / BURROUGHS
                                        603 Rose Avenue
                                        Venice, California 90291
                                        tbarrett@donigerlawfirm.com

                                        Attorneys for Plaintiff